**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| STEVEN SALAITA, | |
| Plaintiff, | |
| v. | |
| CHRISTOPHER KENNEDY, Chairman of the Board of Trustees of the University of Illinois; RICARDO ESTRADA, Trustee of the University of Illinois; PATRICK J. FITZGERALD, Trustee of the University of Illinois; KAREN HASARA, Trustee of the University of Illinois; PATRICIA BROWN HOLMES, Trustee of the University of Illinois; TIMOTHY KORITZ, Trustee of the University of Illinois; EDWARD L. MCMILLAN, Trustee of the University of Illinois; PAMELA STROBEL, Trustee of the University of Illinois; ROBERT EASTER, President of the University of Illinois; CHRISTOPHE PIERRE, Vice President of the University of Illinois; PHYLLIS WISE, Chancellor of the University of Illinois at Urbana-Champaign; THE BOARD OF TRUSTEES OF ILLINOIS; and JOHN DOE UNKNOWN DONORS TO THE UNIVERSITY OF ILLINOIS, | Case No. 15-cv-00924 <br><br> Honorable Harry D. Leinenweber |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

    A.    Dr. Salaita applies for a faculty position at the University of Illinois .............. 2

    B.    Dr. Salaita Publishes Inflammatory Statements on Twitter ........................... 3

    C.    Reaction to Dr. Salaita's Tweets ..................................................................... 5

OVERVIEW OF PLAINTIFF'S CLAIMS ....................................................................... 5

ARGUMENT .................................................................................................................... 6

    I.    Plaintiff's Breach of Contract and Promissory Estoppel Claims Are Precluded by the Nature of the Conditional Offer ...................................... 7

        A.    Plaintiff Did Not Have a Contract with the University ................................... 7

        B.    Plaintiff Is Not Entitled To Equitable Relief for His Unreasonable Reliance on a Conditional Offer ............................................................... 12

    II.    Defendants Did not Violate Plaintiff's Constitutional Rights ..................... 15

        A.    Plaintiff Fails to Allege Any Defendant's Direct Personal Responsibility for Any Purported Violation of His Constitutional Rights ...................................................................................................... 15

        B.    Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law ........................................................................................................ 17

        C.    Plaintiff Fails to Allege Facts Sufficient to Establish a Violation of His Procedural Due Process Rights ................................................... 20

        D.    Plaintiff Fails to Allege an Underlying Constitutional Violation or Agreement Among Defendants .......................................................... 23

    III.    Plaintiff's Remaining State Law Causes of Action Fail to State a Claim Against Any Defendant ......................................................................... 24

        A.    Plaintiff's Merged Claim of Tortious Interference with Contractual and Business Relations Fails as a Matter of Law ........................... 24

        B.    Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress .................................................................................... 26

        C.    Plaintiff's Spoliation of Evidence Claim Fails as a Matter of Law ............... 28

    IV.    Defendants Are Immune from Suit .............................................................. 31

        A.    The Court Lacks Subject Matter Jurisdiction Over the Board and the Trustees and Administrators in their Official Capacities Pursuant to Federal Rule of Civil Procedure 12(b)(1) ............................................. 31

        B.    The Trustees and Administrators Are Immune from Suit in their Individual Capacities Based on the Doctrine of Qualified Immunity .......... 33

CONCLUSION ................................................................................................................ 35

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.J. Maggio Co. v. Willis,*
  316 Ill. App. 3d 1043 (1st Dist. 2000) ................................................................... 11

*A/S Apothekernes Lab. for Specialpraeparater v. I.M.C. Chem. Grp., Inc.,*
  873 F.2d 155 (7th Cir. 1989) ............................................................................... 10

*Allen v. Cedar Real Estate Grp., LLP,*
  236 F.3d 374 (7th Cir. 2001) ............................................................................... 7, 8

*Andersen v. Mack Trucks, Inc.,*
  341 Ill. App. 3d 212 (2d Dist. 2003) ............................................................... 29, 30

*Anderson v. Simon,*
  217 F.3d 472 (7th Cir. 2000) ................................................................................... 2

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 7, 15, 17

*Bank of Pawnee v. Joslin,*
  166 Ill. App. 3d 927 (4th Dist. 1988) ................................................................... 12

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972) ............................................................................................. 20

*Berco Investments, Inc. v. Earle M. Jorgensen Co.,*
  No. 94-3961, 1996 WL 388463 (N.D. Ill. July 8, 1996) ......................................... 8

*Bishop v. Wood,*
  426 U.S. 341 (1976) ............................................................................................. 21

*Black Knight Prods., Inc. v. Univ. of Ill. at Chi.,*
  50 Ill. Ct. Cl. 406 (1998) ...................................................................................... 12

*Bogie v. PAWS Chi.,*
  914 F. Supp. 2d 913 (N.D. Ill. 2012) .................................................................... 27

*Bonds v. Mil. Cnty.,*
  207 F.3d 969 (7th Cir. 2000) ................................................................................ 19

*Bordelon v. Ch. Sch. Reform Bd. of Trs.,*
  233 F.3d 524 (7th Cir. 2000) ................................................................................ 22

-ii-

# TABLE OF AUTHORITIES
(continued)

Page

*Borsellino v. Goldman Sachs Grp., Inc.,*
477 F.3d 502 (7th Cir. 2007) ................................................................................28

*Boyd v. Travelers Ins. Co.,*
166 Ill. 2d 188 (1995) .................................................................................... 29, 30

*Bridges v. Gilbert,*
557 F.3d 541 (7th Cir. 2009) ..........................................................................7, 17

*Brown v. Chi. Bd. of Educ.,*
973 F. Supp. 2d 870 (N.D. Ill. 2013) ...................................................................35

*Cangemi v. Advocate S. Suburban Hosp.,*
364 Ill. App. 3d 446 (1st Dist. 2006) ...................................................................30

*Chi. Limousine Serv., Inc. v. City of Chi.,*
335 Ill. App. 3d 489 (1st Dist. 2002) ...................................................................14

*Cobb-Alvarez v. Union Pac. Corp.,*
962 F. Supp. 1049 (N.D. Ill. 1997) ........................................................................8

*Cohen v. Am. Sec. Ins. Co.,*
735 F.3d 601 (7th Cir. 2013) ................................................................................7

*Cooney v. Rossiter,*
583 F.3d 967 (7th Cir. 2009) ...............................................................................23

*Daniel v. Univ. of Cin.,*
116 Ohio Misc. 2d 1 (Ohio Ct. Cl. 2001) ............................................................13

*Dardeen v. Kuehling,*
213 Ill. 2d 329 (2004) ..........................................................................................29

*DeGroot v. Vill. of Matteson,*
No. 13-08530, 2014 WL 3360562 (N.D. Ill. July 9, 2014) .................................20

*Dougherty v. Akzo Nobel Salt, Inc.,*
47 F. Supp. 2d 989 (N.D. Ill. 1999) .....................................................................14

*Dowd & Dowd, Ltd. v. Gleason,*
181 Ill. 2d 460 (1998) ..........................................................................................26

*Duncan v. Duckworth,*
644 F.2d 653 (7th Cir. 1981) ...............................................................................15

# TABLE OF AUTHORITIES
(continued)

**Page**

*Dunn v. City of Elgin,*
  347 F. 3d 641 (7th Cir. 2003) ............................................................................28

*Elliott v. Thomas,*
  937 F.2d 338 (7th Cir. 1991) ....................................................................... 34, 35

*Evans v. Tavares,*
  No. 09-2917, 2009 WL 3187282 (N.D. Ill. Sept. 30, 2009) .................................6

*Feltmeier v. Feltmeier,*
  207 Ill. 2d 263 (2003) .....................................................................................27

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ........................................................................................17

*Gomez v. Garda CL Great Lakes, Inc.,*
  No. 13-1002, 2013 WL 4506938 (N.D. Ill. Aug. 23, 2013) ..............................24

*Green v. Casey's Retail Co.,*
  No. 11-1103, 2012 WL 253368 (S.D. Ill. Jan. 26, 2012) .................................27

*Hamvi v. Zollar,*
  299 Ill. App. 3d 1088 (1st Dist. 1998) ............................................................14

*Hanley v. Green Tree Servicing, LLC,*
  934 F. Supp. 2d 977 (N.D. Ill. 2013) ................................................................2

*Harper v. Univ. of Ill. at Chi.,*
  No. 95-5987, 1996 WL 288628 (N.D. Ill. May 30, 1996) ................................11

*Hartmann Realtors v. Biffar,*
  2014 IL App. (5th) 130543 .............................................................................29

*Hatcher v. Cheng,*
  No. 13-00407, 2014 WL 5358408 (S.D. Ill. Aug. 7, 2014) ..............................34

*Head v. Chi. Sch. Bd. of Trs.,*
  224 F.3d 794 (7th Cir. 2000) ..........................................................................22

*Hosty v. Carter,*
  412 F.3d 731 (7th Cir. 2005) ..........................................................................35

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
  131 Ill. 2d 145 (1989) .....................................................................................25

# TABLE OF AUTHORITIES
(continued)

Page

*IK Corp. v. One Financial Place P'ship*,
    200 Ill. App. 3d 802 (5th Dist. 1990) ................................................................14

*In re Midway Airlines, Inc.*,
    180 B.R. 851 (Bankr. N.D. Ill. 1995).............................................................14

*Knierim v. Izzo*,
    22 Ill. 2d 73 (1961) .................................................................................27

*Kokkinis v. Ivkovich*,
    185 F.3d 840 (7th Cir. 1999)....................................................................18

*Krieg v. Ameritech Int'l, Inc.*,
    No. 96-4751, 1998 WL 161010 (N.D. Ill. Mar. 31, 1998) .................................13

*Kroll v. Bd. of Trs. of Univ. of Ill.*,
    934 F. 2d 904 (7th Cir. 1991) ...................................................................31

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ...............................................................................32

*LaSalle Nat'l Bk. v. Vega*,
    167 Ill. App. 3d 154 (2d Dist. 1988)...........................................................8

*Leibovitch v. Syrian Arab Republic*,
    25 F. Supp. 3d 1071 ................................................................................28

*Lewis v. Westinghouse Elec. Corp.*,
    139 Ill. App. 3d 634 (1st Dist. 1985) ..........................................................27

*Lopez v. Bd. of Trs. of Univ. of Ill. at Chi.*,
    344 F. Supp. 2d 611 (N.D. Ill. 2004)..........................................................20

*Loubser v. Thacker*,
    440 F.3d 439 (7th Cir. 2006)....................................................................23

*Marquez v. Turnock*,
    967 F.2d 1175 (7th Cir. 1992) ..................................................................18

*Martin v. City of Chi.*,
    No. 12-9207, 2014 WL 4947674 (N.D. Ill. Sept. 30, 2014) ....................24, 29, 30

*Martin v. Keeley & Sons, Inc.*,
    2012 IL 113270......................................................................................29

# TABLE OF AUTHORITIES
(continued)

Page

*Mason & Dixon Lines, Inc. v. Glover,*
    975 F.2d 1298 (7th Cir. 1992) ........................................................................14

*Massey v. Johnson,*
    457 F.3d 711 (7th Cir. 2006).............................................................................17

*McElearney v. Univ. of Ill. at Chi. Circle Campus,*
    612 F.2d 285 (7th Cir. 1979)............................................................................23

*McGrath v. Fahey,*
    126 Ill. 2d 78 (1988) ........................................................................................26

*McKee v. First Nat. Bank of Brighton,*
    220 Ill. App. 3d 976 (4th Dist. 1991) ................................................................8

*Mutter v. Madigan,*
    17 F. Supp. 3d 752 ....................................................................................31, 32

*Nat'l Org. for Women, Inc. v. Scheidler,*
    No. 86-7888, 1997 WL 610782 (N.D. Ill. Sept. 23, 1997) ..............................25

*Newton Tractor Sales, Inc. v. Kubota Tractor Corp.,*
    233 Ill. 2d 46 (2009)........................................................................................13

*Nielsen-Massey Vanillas, Inc. v. City of Waukegan,*
    276 Ill. App. 3d 146 (2d Dist. 1995)................................................................12

*Oja v. Blue Mountain Cmty. Coll.,*
    No. 03-964, 2004 WL 1119886 (D. Or. May 19, 2004) *aff'd in relevant part, rev'd in part*, 184
    F. App'x. 597 (9th Cir. 2006)..........................................................................13

*Osteen v. Henley,*
    13 F.3d 221 (7th Cir. 1993).............................................................................32

*Patrick Eng'g, Inc. v. City of Naperville,*
    2012 IL 113148................................................................................................11

*Pearson v. Callahan,*
    555 U.S. 223 (2009)........................................................................................34

*People ex rel. Bd. of Trs. of Univ. of Ill. v. Barrett,*
    382 Ill. 321 (1943) ............................................................................................9

*PharMerica Chi., Inc. v. Meisels,*
    772 F. Supp. 2d 938 (N.D. Ill. 2011) ................................................................2

# TABLE OF AUTHORITIES
(continued)

Page

*Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty, Ill.*,
  391 U.S. 563 (1968) ................................................................................17, 18, 19

*Piggee v. Carl Sandburg Coll.*,
  464 F.3d 667 (7th Cir. 2006) ..................................................................17, 18, 19

*Pollak v. Bd. of Trs. of Univ. of Illinois*,
  No. 99-710, 2004 WL 1470028 (N.D. Ill. June 30, 2004) ....................................31

*Pompa v. Swanson*,
  2013 IL App ..........................................................................................................26

*Propst v. Bitzer*,
  39 F.3d 148 (7th Cir. 1994) ..................................................................................19

*Pub. Fin. Corp. v. Davis*,
  66 Ill. 2d 85 (1976) ..............................................................................................28

*Pugel v. Bd. of Trs. of Univ. of Ill.*,
  378 F.3d 659 (7th Cir. 2004) ................................................................................20

*Puri v. Blockbuster Music Retail, Inc.*,
  No. 95-50018, 1995 WL 756855 (N.D. Ill. Dec. 20, 1995) ....................................8

*Quake Const., Inc. v. Am. Airlines, Inc.*,
  141 Ill. 2d 281 (1990) ..........................................................................................13

*Raymond v. Alexander*,
  No. 11-00532, 2012 WL 4388328 (S.D. Ill. Sept. 25, 2012) ......................... 24, 25

*Richman v. Sheehan*,
  270 F.3d 430 (7th Cir. 2001) ................................................................................33

*Rockford Cutting Tools & Abrasives v. Norton Co.*,
  No. 90-2743, 1991 WL 191601 (N.D. Ill. Sept. 19, 1991) ..................................13

*Roehl v. Merrilees*,
  No. 11-4886, 2012 WL 1192093 (N.D. Ill. Apr. 10, 2012) ..................................24

*Ross v. May Co.*,
  377 Ill. App. 3d 387 (1st Dist. 2007) ...................................................................14

*S.J. v. Perspectives Charter Sch.*,
  685 F. Supp. 2d 847 (N.D. Ill. 2010) ...................................................................28

## TABLE OF AUTHORITIES

(continued)

**Page**

*Safi v. Royal Jordanian Airlines,*
No. 08-7365, 2010 WL 4339434 (N.D. Ill. Oct. 25, 2010) ................................................27

*Saucier v. Katz,*
533 U.S. 194 (2001) ..........................................................................................................35

*Scheduling Corp. of Am. v. Massello,*
119 Ill. App. 3d 355 (1st Dist. 1983) ...............................................................................25

*Scherer v. Balkema,*
840 F.2d 437 (7th Cir. 1988) .............................................................................................23

*Schrier v. Univ. of Co.,*
427 F.3d 1253 (10th Cir. 2005) ........................................................................................19

*Simpson v. Robb,*
No.13-1263, 2014 WL 4817491 (C.D. Ill. Sept. 29, 2014) ..............................................15

*Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania,*
540 F. App'x 80 (3d Cir. 2013) ........................................................................................32

*Spanierman v. Hughes,*
576 F. Supp. 2d 292 (D. Conn. 2008) ...............................................................................21

*Specht v. Google, Inc.,*
660 F. Supp. 2d 858 (N.D. Ill. 2009) ..................................................................................6

*Steshenko v. Gayrard,*
No. 13-03400, 2014 WL 4904424 (N.D. Cal. Sept. 29, 2014) .........................................21

*Stone v. Bd. of Trs. of N. Ill. Univ., et al.,*
No. 13-04089, 2014 WL 3845164 (N.D. Ill. Aug. 5, 2014) ..............................................23

*Tanner (Gerard E.) v. Board of Trs. of University of Illinois,*
43 Ill. Ct. Cl. 12 (1989) .............................................................................................10, 36

*Thomas v. Bd. of Exam'rs, Chi. Pub. Sch.,*
651 F. Supp. 664 (N.D. Ill. 1986) .....................................................................................21

*Trejo v. Shoben,*
319 F.3d 878 (7th Cir. 2003).......................................................................................17, 22

*Upadhya v. Langenberg,*
834 F.2d 661 (7th Cir. 1987)................................................................................................9

# TABLE OF AUTHORITIES

(continued)

**Page**

*Venture Assocs. v. Zenith Data Sys.*,
987 F.2d 429 (7th Cir. 1993) .................................................................................... 2

*Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*,
348 Ill. App. 3d 929 (2d Dist. 2004) ..................................................................... 7, 8

*Wadden v. Vill. of Woodridge*,
193 Ill. App. 3d 231 (2d Dist. 1990) ...................................................................... 12

*Williams v. Univ. of Ill.*,
945 F. Supp. 163 (N.D. Ill. 1996) .......................................................................... 33

*Wood v. Moss*,
134 S.Ct. 2056 (2014) ............................................................................................ 34

*Wright v. Assoc. Ins. Cos. Inc.*,
29 F.3d 1244 (7th Cir. 1994) .................................................................................... 2

*Yatvin v. Madison Metro. Sch. Dist.*,
840 F.2d 412 (7th Cir. 1988) .................................................................................. 20

**STATUTES**

5 ILCS 160/1, *et seq.* ..................................................................................... 29, 30

5 ILCS 160/2 ........................................................................................................... 30

5 ILCS 160/8 ........................................................................................................... 30

110 ILCS 305/1 ....................................................................................................... 33

110 ILCS 305/7 ......................................................................................................... 9

110 ILCS 305/7(a) .................................................................................................... 9

705 ILCS 505/1, *et. seq.* ......................................................................................... 32

705 ILCS 505/8 ....................................................................................................... 32

745 ILCS 5/1 ........................................................................................................... 32

42 U.S.C. § 1983 ........................................................................................... 5, 15, 23

42 U.S.C. § 1985 ............................................................................................... 5, 23

## INTRODUCTION

Despite its length and hyperbole, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Each of its nine counts is flawed as a matter of law. At its core, Plaintiff's Complaint rests on two entirely unsupported propositions: first, that he had entered into a contract with the University of Illinois creating an unconditional right to a faculty position; and second, that certain University administrators[1] and the Board of Trustees, in a conspiracy with unnamed donors, breached this contract. Each of Plaintiff's nine counts flows from these twin assumptions.

The allegations set forth in Plaintiff's Complaint, however, reveal precisely the opposite. At no time was Dr. Steven Salaita ("Dr. Salaita" or "Plaintiff") ever an employee of the University of Illinois (the "University"). As an applicant proceeding through the rigorous process for selecting tenured faculty, Dr. Salaita received a *conditional* offer of employment as a tenured associate professor at the University that was expressly "*subject to the approval*" of the Board of Trustees (the "Board"). The Board, comprised of Trustees Christopher Kennedy, Ricardo Estrada, Patrick J. Fitzgerald, Karen Hasara, Patricia Brown Holmes, Timothy Koritz, Edward L. McMillan, and Pam Strobel (collectively, the "Trustees"), denied Dr. Salaita's appointment to the faculty.[2] Because Board approval was not given and the condition of the offer was not met, Dr. Salaita did not become an employee at the University and therefore was never entitled to the attendant benefits and procedural protections provided to public employees.

The documents relied upon by Plaintiff further establish that Dr. Salaita's own conduct during the time that his appointment was pending called into question his fitness as a professor, which led to the Board's decision not to approve his appointment.

---

[1] Specifically, Plaintiff names Robert Easter, President of the University of Illinois, Christophe Pierre, Vice President for Academic Affairs for the University of Illinois, and Phyllis Wise, Chancellor of the University of Illinois at Urbana-Champaign (collectively, the "Administrators").

[2] James Montgomery is also a trustee on the Board. He voted in favor of Dr. Salaita's appointment, (Compl. ¶ 96), and is not a named defendant.

## STATEMENT OF FACTS[3]

### A.  Dr. Salaita applies for a faculty position at the University of Illinois.

In late 2012, the American Indian Studies Program at the University of Illinois at Urbana-Champaign began a search process to hire a new full-time faculty member.  (Compl. ¶ 20.)  The application process for an associate professor tenured position is "rigorous" and involves multiple steps.  (*Id.* ¶¶ 21-24).  The final and most critical step, however, is approval by the Board.  (*Id.* ¶ 25.)

Dr. Salaita, then a professor at Virginia Polytechnic Institute and State University ("Virginia Tech"), applied for the position.  (*Id.* ¶ 21.)  As part of the application process, on September 27, 2013, Brian Ross, the Interim Dean of the College of Liberal Arts and Sciences, wrote to Dr. Salaita regarding a tenured position in the American Indian Studies Program at the University.  (*Id.* ¶ 25.)  On October 3, 2013, Dean Ross sent a revised letter to Dr. Salaita that communicated a conditional offer of employment.  (*Id.* ¶ 25.)  The letter, a copy of which is attached to Exhibit 1,[4] characterized the offer as a "***recommendation for appointment***" and clearly stated that the recommendation was "***subject to approval by the Board of Trustees***."  (Compl. ¶ 25; Ex. 1, Doc. 2 at Pgs. 46-47.) (emphasis added).  Dr. Salaita signed and returned a photocopy of the letter.  (*Id.*)  At no time following the fall of 2013 did anyone from the University, acting in any capacity, inform Dr. Salaita

---

[3] For purpose of Defendants' Motion to Dismiss, Plaintiff's allegations must be taken as true.  *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 980 (N.D. Ill. 2013).  By reciting Plaintiff's allegations, Defendants do not concede that they are true.

[4] Documents that are attached to a motion to dismiss are appropriately "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."  *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In addition, "in ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment."  *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 946 (N.D. Ill. 2011) (quoting *Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000)).  The Committee on Academic Freedom and Tenure ("CAFT") of the University of Illinois at Urbana-Champaign's Report on the Investigation into the Matter of Steven Salaita (the "CAFT Report") is attached to Exhibit 1  Plaintiff's Complaint refers to and relies upon the CAFT Report, (*see* Compl. ¶¶ 39, 56), and the CAFT Report and the October 3, 2013 letter in particular are central to Plaintiff's claims.  The October 3, 2013 letter is attached to Exhibit 1 as Document 2 (at Pgs. 46-47).

that he had obtained the approval of the Board or that his appointment was no longer subject to the

Board's approval. Plaintiff's entire Complaint is an unsuccessful attempt to elide this critical fact.

B. <u>Dr. Salaita Publishes Inflammatory Statements on Twitter</u>.

Throughout the fall of 2013 and into the summer of 2014, Dr. Salaita was still employed by

Virginia Tech. In May of 2014, prior to any action by the Board on his appointment, Dr. Salaita

notified Virginia Tech that he would be leaving, effective in August of 2014. (*Id.* ¶ 34.) In June

2014, while still employed by Virginia Tech, Dr. Salaita, a member of "Twitter," an online social

networking service, began sending a series of "Tweets"[5]—short public statements limited to 140

characters. In his Complaint, Dr. Salaita states that "he has used his Twitter account as an outlet for

his thoughts and reactions to events in the Middle East." (Compl. ¶ 61.) These "Tweets" also

revealed that Dr. Salaita was entirely unfit to be a professor at the University of Illinois. For

example, in June 19, 2014, after various media reported that three Israeli teenagers had been

kidnapped and were presumed dead, Dr. Salaita wrote: "[y]ou may be too refined to say it, but I'm

not: I wish all the f**king West Bank settlers would go missing."[6] Dr. Salaita continued to post

similar remarks even after the three teens were found murdered.

Throughout June and July, Dr. Salaita also offered the following "thoughts and reactions to

events in the Middle East":[7]

"Let's cut to the chase: If you're defending #Israel right now you're an awful human

---

[5] Twitter defines a "tweet" as "an expression of a moment or idea. It can contain, text, photos, and videos." *See* Twitter Website, *available at* https://about.twitter.com/what-is-twitter/story-of-a-tweet.

[6] By June 30, 2014, it was determined that the teenage boys had been murdered. *See* Jodi Rudoren & Isabel Kershner, *Israel's Search for 3 Teenagers Ends in Grief*, NYT (June 30, 2014), *available at* http://www.nytimes.com/2014/07/01/world/middleeast/Israel-missing-teenagers.html?_r=0.

[7] These tweets are appended to the CAFT Report and are publicly available. (*See* Ex. 1, App. C at Pgs. 39-40.) Plaintiff's Complaint relies on the tweets in question as the basis for his claims. (*See, e.g.*, Compl. ¶¶ 64-67.) Accordingly, the tweets are appropriately part of the record for the purposes of Defendants' Motion to Dismiss. While Plaintiff maintains that tweets "are intended to be pithy . . . [and] are not inherently designed to capture nuance and subtly [sic]," (*id.* ¶ 60), he maintains that his tweets were intended "to bring texture to an increasingly politicized and polarized debate," (*id.* ¶ 62). For the propriety of a public filing with this Court, Defendants have edited the profanity in his tweets.

being"

"By eagerly conflating Jewishness and Israel, Zionists are partly responsible when people say antisemitic sh*t in response to Israeli terror"

"Zionist uplift in America: every little Jewish boy and girl can grow up to be the leader of a murderous colonial regime"

"The @IDFSpokesperson is a lying mother**ker"

"Do you have to visit your physician for prolonged erections when you see pictures of dead children in #Gaza?"

"'If it weren't for Hamas, Israel wouldn't have to bomb children.' Look motherf**ker, if it weren't for Israel there'd be no #GazaStrip"

"If #Israel affirms life, then why do so many Zionists celebrate the slaughter of children? What's that? Oh, I see JEWISH life"

"Zionists, take responsibility: if your dream of an ethnocratic Israel is worth the murder of children, just f**king own it"

"At this point, if Netanyahu appeared on TV with a necklace made from the teeth of Palestinian children, would anybody be surprised?"

"I repeat, if you're defending #Israel right now, then 'hopelessly brainwashed' is your best prognosis"

"Zionists: transforming 'antisemitism' from something horrible into something honorable since 1948"

"F**k you, #Israel. And while I'm at it, f**k you, too, PA, Sisi, Arab monarchs, Obama, UK, EU, Canada, US Senate, corporate media, and ISIS"

"Ever wonder what it would look like if the KKK had F-16s and access to a surplus population of ethnic minorities? See #Israel and #Gaza"

"When I am frustrated, I remember that, despite the cigarettes and fatty foods, I have a decent chance of outliving #Israel;

"We can argue into eternity, but in the end this is what matters most: the people in #Gaza are there because they're not Jewish"

"If you haven't recently been called a terror-loving anti-Semite, then I'm sorry to say your critique of #Israel is totally weak"

"It's silly when white American kids pretend to be Middle Eastern. It's unconscionable when they go play soldier in the Middle East"

[4]

#Israel's message to #Obama and #Kerry: we'll kill as many Palestinians as we want, when we want. p.s. f*ck you, pay me."

C. Reaction to Dr. Salaita's Tweets.

Shortly after Dr. Salaita published these statements, Chancellor Wise received hundreds of letters, e-mails, and phone calls from concerned students, family members of students, alumni of the University, and concerned citizens, expressing their outrage at these comments and the possibility that Dr. Salaita would be approved as a member of the University faculty. (*See* Ex. 1, Doc. 6 at Pgs. 60-140.)[8] On July 24, 2014, the Board held a regularly scheduled meeting at the Chicago campus, a portion of which was an executive session, as permitted under the Illinois Open Meetings Act. Among the matters discussed was Dr. Salaita's pending appointment to the faculty and the likelihood of Board approval. (Compl. ¶¶ 82-83.) Following this meeting, on August 1, 2014, Chancellor Wise and Vice President Pierre wrote Dr. Salaita to inform him that "your appointment will not be recommended for submission to the Board of Trustees in September." (Compl. ¶ 71.) The letter further noted that approval by the Board was unlikely. (*Id.*) On September 11, 2014, the Board met for its next regularly scheduled meeting. By a vote of eight to one, the Board voted not to approve Dr. Salaita for appointment an appointment to the faculty. (*Id.* ¶ 95.)

**OVERVIEW OF PLAINTIFF'S CLAIMS**

From this straightforward decision, Plaintiff has manufactured nine ill-pleaded claims based on his unreasonable subjective interpretation of the conditional contractual offer and the Board's appropriate exercise of its authority. Specifically, Plaintiff alleges: First Amendment retaliation in violation of 42 U.S.C. § 1983 against the Trustees and Administrators (Count I); a procedural due process claim pursuant to 42 U.S.C. § 1983 against the Trustees and Administrators (Count II);

---

[8] These letters are referenced in Plaintiff's Complaint, (*see* Compl. ¶¶ 77-78), were obtained pursuant to requests under the Illinois Freedom of Information Act (*id.* ¶ 77), and serve as the basis for several of Plaintiff's claims against each Defendant. Accordingly, they are appropriately part of the record for the purposes of Defendants' Motion to Dismiss.

conspiracy in violation of 42 U.S.C. § 1983 and § 1985 against all Defendants (Count III); promissory estoppel against the Board (Count IV); breach of contract against the Board (Count V); tortious interference with contractual and business relations against John Doe Unknown Donors to the University of Illinois ("Unknown Alleged Donors") (Counts VI and VII); intentional infliction of emotional distress against all Defendants (Count VIII); and spoliation of evidence against Chancellor Wise (Count IX).

As will be set forth in detail below, each of these causes of action fails as a matter of law. First, the breach of contract and promissory estoppel claims fail because there was no binding contract and there was no "unambiguous promise" by the University upon which Plaintiff could reasonably rely (Section I). Second, Plaintiff's civil rights claims fail to state a cause of action because Plaintiff fails to make specific allegations against the Trustees and Administrators, and because the University properly balanced Dr. Salaita's interest in making his inflammatory statements against the University's interest in providing a safe and efficient educational environment. Further, Dr. Salaita was not denied due process because he did not have a property interest in a faculty position, has not alleged that Defendants' actions have made it impossible for him to find employment in his field, and has failed to allege an actionable agreement among Defendants (Section II). Third, Plaintiff's various tort claims under state law – tortious interference with contract, tortious interference with business relations, intentional infliction of emotional distress, and spoliation – each fail to establish the elements necessary to plead any of these causes of action (Section III). Finally, even if Plaintiff were able to state a claim, which he cannot, the Court lacks subject matter jurisdiction over the Board and the Trustees and Administrators in their official capacities based on the doctrine of sovereign immunity, and the Trustees and Administrators are entitled to qualified immunity in their individual capacities (Section IV).

**ARGUMENT**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is to accept as true all well-pleaded facts in the Complaint and draw all reasonable inferences in favor of the Plaintiff. *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 862 (N.D. Ill. 2009). The Court, however, need not accept mere legal conclusions. *Evans v. Tavares*, No. 09-2917, 2009 WL 3187282, at *1 (N.D. Ill. Sept. 30, 2009). "Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Rather, a complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation marks omitted) (emphasis in original). To survive a motion to dismiss, "[t]he complaint must allege more than a sheer possibility that a defendant has acted unlawfully." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612 (7th Cir. 2013) (internal quotation marks omitted). Plaintiff's Complaint fails to state a claim under Federal Rule of Civil Procedure 8(a) and must be dismissed.

I. **Plaintiff's Breach of Contract and Promissory Estoppel Claims Are Precluded by the Nature of the Conditional Offer**

    A. Plaintiff Did Not Have a Contract with the University.

Plaintiff has failed to plead facts establishing the existence of a valid contract with the University. In order to state a claim for breach of contract under Illinois law, a plaintiff must allege facts establishing: (1) a valid contract, including offer and acceptance, consideration, and definite and certain terms; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) damages resulting from the breach. *Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill. App. 3d 929, 940 (2d Dist. 2004). Courts must interpret purported contractual documents "to give effect to the intentions of the parties as expressed in the four corners of the instrument." *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 381 (7th Cir. 2001). Here, Plaintiff has not established and cannot establish the existence of a valid contract and his breach of contract claim must be dismissed.

[7]

i.    *The Offer Was "Subject to the Approval of the Board of Trustees"*

Plaintiff has failed to plead that there was an offer that he could accept.  The offer

propounded to Plaintiff was clearly conditional, stating expressly that it was "subject to the approval

of the Board of Trustees."  (*See* Ex. 1, Doc. 2 at Pgs. 46-47; Compl. ¶ 25.)  Under Illinois principles

of contract law, "an offeror has complete control over an offer and may condition acceptance to the

terms of the offer."  *Puri v. Blockbuster Music Retail, Inc.*, No. 95-50018, 1995 WL 756855, at *4 (N.D.

Ill. Dec. 20, 1995) (citing *LaSalle Nat'l Bank. v. Vega*, 167 Ill. App. 3d 154 (2d Dist. 1988)).

Moreover, "'[a] manifestation of willingness to enter into a bargain is not an offer if the person to

whom it is addressed knows or has reason to know that the person making it does not intend to

conclude a bargain until he has made a further manifestation of assent.'"  *Vill. of S. Elgin*, 348 Ill.

App. 3d at 943 (quoting Restatement (Second) of Contracts § 26 (1981)).   "The language 'subject to'

generally indicates a party's promise is not to be performed unless a condition occurs."  *McKee v.

First Nat'l Bank of Brighton*, 220 Ill. App. 3d 976, 983-84 (4th Dist. 1991).

Thus, when the terms of an offer state that it is *subject to approval*, the "subject to" event is a

condition precedent, which **must** be met in order to the form the contract.  *See Allen*, 236 F.3d at

381-82 (affirming decision of district court that found inclusion of the phrase "this offer is subject

to purchaser[']s approval" a condition precedent to the formation of the contract); *Cobb-Alvarez v.*

*Union Pac. Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997) (applying Illinois law and finding that

severance letter did not constitute an acceptable offer where participation in the severance program

was "subject to the approval of Union Pacific's Vice President of Human Resources"); *Berco Invs.,*

*Inc. v. Earle M. Jorgensen Co.*, No. 94-3961, 1996 WL 388463, at *4 (N.D. Ill. July 8, 1996) (applying

Illinois law and granting a motion to dismiss a breach of contract claim where a purported contract

stated that it was subject to approval by the defendant's board and such approval was not given);

*Puri*, 1995 WL 756855, at *4 (finding no contract where, among other things, offer was "subject to

[8]

the approval of an authorized officer of Blockbuster in his/her sole discretion" and such approval

was not given). As the offeror, the University was entitled to control the nature of its offer and the

unequivocal language in the October 3, 2013 letter that Plaintiff's "recommendation for

appointment" would be "subject to approval by the Board of Trustees" created a condition

precedent, which was not met.

Plaintiff attempts to minimize the importance of this conditional language, relying on the

CAFT Report and speculating that it is "virtually unheard of for a university's board to overrule a

faculty hiring decision after the university has obtained the recruited faculty member's acceptance of

an offer of a tenured position." (Compl. ¶¶ 39-40.) Plaintiff fallaciously characterizes the Board's

role in the hiring process as "ministerial," (*id.* ¶ 51), one of "delegation," (*id.* ¶ 53), and its approval

as a "ratification," (*id.* ¶ 54).

Plaintiff's assumptions are entirely inconsistent with Illinois law. Under Illinois law, the

Board is empowered to make the final decision regarding faculty hiring. The law is clear that only

the Board has the power to appoint professors to the faculty of the University. *See* 110 ILCS

305/7(a) ("The Trustees shall have the power to . . . appoint such professors and instructors . . . as

may be required to teach . . . ."); *see also People ex rel. Bd. of Trs. of Univ. of Ill. v. Barrett*, 382 Ill. 321, 340

(1943) (holding that selection and employment of University employees "are powers committed

solely to the corporation [i.e., the Board of Trustees]"); 110 ILCS 305/7 ("The Board of Trustees

shall have the authority to adopt all administrative rules which may be necessary for the effective

administration, enforcement and regulation of all matters for which the Board has jurisdiction or

responsibility."). Plaintiff's argument also runs afoul of the University *Statutes*—bylaws promulgated

by the Board, which "have the forc[e] of administrative rules and hence 'law' in Illinois." *See*

*Upadhya v. Langenberg*, 834 F.2d 661, 663 (7th Cir. 1987). These *Statutes* grant the Board sweeping

powers to manage and administer the University. *See* Preamble to University *Statutes* ("Within the

[9]

limits fixed by the Illinois constitution and laws, the Board of Trustees exercises final authority over the University."); University *Statutes*, Article XIII, § 7 ("[T]he board expressly reserves to itself the power to act on its own initiative in all matters affecting the University, notwithstanding that such action may be in conflict or may not be in conformance with the provisions of these *Statutes*.").[9]

Plaintiff further attempts to minimize the Board's role in the hiring process, arguing that the Board is *required* to approve his appointment pursuant to Article IX, § 3(a) of the University *Statutes*, which provides that "[a]ll appointments, reappointments, and promotions of the academic staff . . . shall be made by the Board of Trustees on the recommendation of the chancellor/vice president concerned and the president." (Compl. ¶ 52.) As an initial matter, the term "recommendation" plainly indicates that appointments need not be approved by the Board. *See Tanner (Gerard E.) v. Bd. of Trs. of Univ. of Ill.*, 43 Ill. Ct. Cl. 12, 17 (1989) (recognizing that a statute authorizing the Board to issue degrees "on recommendations of the faculty" created a "discretionary and not mandatory" power). In addition, read in the context of the faculty appointment process, this provision merely indicates that Board approval of the recommendation is the manner in which appointments are approved, if and when they are approved.

Ultimately, Plaintiff's subjective interpretation of the Board's role is immaterial to whether a contract existed. In *A/S Apothekernes Lab. for Specialpraeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 157-58 (7th Cir. 1989), the plaintiff believed a contract existed to purchase the Biochemical Division of the defendant, despite language requiring an agreement of sale acceptable to the defendant's board of directors. The Seventh Circuit disagreed and held for the defendant. The court rejected plaintiff's "suggest[ion] that the board approval provision did not mean what it appeared to mean" and found that "the language in the letter of intent should have put [the

---

[9] As Plaintiff highlights in the Complaint, Article IX, § 12(7) of the University *Statutes* specifically empowers the Board to adjudicate the dismissal of a tenured professor. While Plaintiff was not a tenured professor at the University and thus, was not entitled to the process outlined in the University *Statutes*, *see infra* at Section II.B.i., this provision further underscores the critical role played by the Board in faculty employment matters.

plaintiff's representative] on notice that any promises by [the defendant's agent] of rubber-stamp board approval were not to be taken seriously." *Id.* at 157-58. Here, the conditional offer letter informing Plaintiff that his "recommendation for appointment" would be "subject to approval of the Board of Trustees" renders Plaintiff's subjective interpretation of that process irrelevant.

### ii. *The Offerors Had No Actual or Apparent Authority to Bind the University*

Plaintiff does not contend that the Board or any Trustee made him an offer of employment. Rather, Plaintiff alleges that he received the October 3, 2013 conditional offer letter from Interim Dean Ross upon the recommendation of Professor Byrd. (Compl. ¶ 25.) Plaintiff does not allege, however, that the Board "consented to or knowingly acquiesced in [Interim Dean Ross's or Professor Byrd's] exercise of authority," as required to show apparent authority to make such an offer. *See A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1050 (1st Dist. 2000). Such a conditional offer did not purport to bind the University — nor could it.

Article I, Section 6 of the University *Statutes* expressly incorporates the *General Rules Concerning University Organization and Procedure* of the University of Illinois (the "*General Rules*") to the extent that they do not conflict with the University *Statutes*. Article 2, Section 4(c) of the *General Rules* requires that either the Secretary of the Board or the Comptroller of the University execute University contracts. Plaintiff does not allege that either the Secretary or the Comptroller signed the conditional offer letter. Nor could Plaintiff contend that Interim Dean Ross had apparent authority to bind the Board.[10] Under settled Illinois law, the doctrine of apparent authority does not bind

---

[10] The University *Statutes* describe the dean's role in the faulty hiring process such that he or she shall "recommend the appointment, reappointment, nonreappointment, and promotion of members of the academic staff." University *Statutes*, Article III, § 3(d). The provision provides that "[i]n case a recommendation from a college is not approved by the chancellor/vice president, the dean may present the recommendation to the president, and, if not approved by the president, the dean *with the consent of the Board of Trustees may present the recommendation in person before the Board of Trustees in session.*" *Id.* (emphasis added). Once again, the University *Statutes* vest the ultimate authority for appointment of academic staff with the Board of Trustees.

governmental bodies such as the Board.[11]  As the Illinois Supreme Court recently stated, it is well established under Illinois law that "anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority." *Patrick Eng'g, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 36; *see also Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146, 156 (2d Dist. 1995) (holding that a governmental body "cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official . . . .").

In *Black Knight Prods., Inc. v. Univ. of Ill. at Chi.*, 50 Ill. Ct. Cl. 406, 410 (1998), the Illinois Court of Claims granted the University's motion to dismiss a breach of contract claim where the plaintiff alleged that a signature by an employee of the University of Illinois at Chicago bound the University to a promotional contract.  Noting that "in dealing with an agent of the State one must ascertain at his peril the authority of the agent, and the mere assertions of the agent are not sufficient to bind the State," the court held that because the plaintiff had not pleaded that the University employee had actual authority to execute the contract and because the doctrine of apparent authority did not apply, the employee could not make a promise that would bind the Board.  *Id.*  Accordingly, as a matter of law, the October 3, 2013 letter could not serve to bind the Board.[12]

In sum, there was no contract to breach.  For this reason, Count V of the Complaint must be dismissed as a matter of law.

---

[11] *See Harper v. Univ. of Ill. at Chi.*, No. 95-5987, 1996 WL 288628, at *2 (N.D. Ill. May 30, 1996) ("There can be no dispute that UIC is an arm of 'the state' for purposes of the Eleventh Amendment"); *see also infra* at Section IV.A.i. (discussing the status of the Board as a state governmental entity for sovereign immunity purposes).

[12] Under Illinois law, an alleged agent cannot have apparent authority to bind a principal where applicable statutes reserve that power to the principal.  When, as here, statutes require that a governmental body has the exclusive right to make an offer on behalf of the State, an unauthorized agent cannot have apparent authority on behalf of that body.  *See Bank of Pawnee v. Joslin,* 166 Ill. App. 3d 927, 940 (4th Dist. 1988) (holding that where statutes required that any contract entered into by municipality be approved by a vote of municipal officers, clerk and village manager did not have apparent authority to make offers because a contracting party is charged with ascertaining authority of representatives of governmental bodies); *see also Wadden v. Vill. of Woodridge*, 193 Ill. App. 3d 231, 241 (2d Dist. 1990) (holding that there was no apparent authority by a manager to make an employment contract for commissions on behalf of a town when ordinances stated he did not have that authority).

B. **Plaintiff Is Not Entitled To Equitable Relief for His Unreasonable Reliance on a Conditional Offer.**

In tacit recognition of the lack of an enforceable contract, Plaintiff seeks equitable relief based on the doctrine of promissory estoppel. Once again, Plaintiff has failed to state a claim upon which relief can be granted. To state a claim for promissory estoppel under Illinois law, Plaintiff must plead that: (1) the Board made an *unambiguous* promise to him; (2) Plaintiff *reasonably* relied on such promise; (3) Plaintiff's *reasonable* and *justifiable* reliance was expected and foreseeable by the Board; and (4) Plaintiff relied on the unambiguous promise to his detriment. *See Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009); *Quake Const., Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 310 (1990). Plaintiff's promissory estoppel claim is fatally deficient as a matter of law as he fails to allege an unambiguous promise by the Board or anyone with the authority to bind the Board and his reliance on the conditional offer was unreasonable.

   *i.   The Board Never Made an Unambiguous Promise of Employment*

As discussed *supra* at Section II.A., the October 3, 2013 letter to Plaintiff was a conditional offer of employment "subject to the approval of the Board of Trustees." Under Illinois law, to support a promissory estoppel a claim "a promise need not be express, but it must be unambiguous." *Rockford Cutting Tools & Abrasives v. Norton Co.*, No. 90-2743, 1991 WL 191601, at *4 (N.D. Ill. Sept. 19, 1991) (finding no unambiguous promise despite facts that led the plaintiff to believe a contract had been formed). In its plain terms, the conditional offer letter was not an unambiguous promise.

Moreover, to support a promissory estoppel claim, Plaintiff must allege that it was the Board who made the alleged unambiguous promise. *See Krieg v. Ameritech Int'l, Inc.*, No. 96-4751, 1998 WL 161010, at *5 (N.D. Ill. Mar. 31, 1998) (applying Illinois law) (holding that a promise by third parties who did not have authority as agents for the defendant could not support a claim for promissory estoppel). The Complaint is silent with regard to **any** promises made by the Board or any Trustee to

Plaintiff. Just as with his breach of contract claim, Plaintiff may not argue that the letter from Interim Dean Ross bound the Board.[13] In addition, "[e]stoppel against public bodies is generally not favored and is allowed in only rare and unusual circumstances." *Chi. Limousine Serv., Inc. v. City of Chi.*, 335 Ill. App. 3d 489, 500 (1st Dist. 2002) (internal quotation marks omitted); *see Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 1096 (1st Dist. 1998) ("The affirmative act which prompts a party's reliance must be an act of the public body itself such as a legislative enactment rather than the unauthorized acts of a ministerial officer or a ministerial misinterpretation."). Plaintiff has failed to allege rare and unusual circumstances prompted by an affirmative act by an act of the University such that estoppel would be applicable against the Board.

*ii. Plaintiff's Reliance on the Conditional Offer Was Unreasonable*

It is bedrock law in Illinois that "[w]here the defendant's promise is conditional, the plaintiff's reliance is not reasonable, as [o]pinions based on contingent or future events are not the basis of an action for . . . promissory estoppel." *In re Midway Airlines, Inc.*, 180 B.R. 851, 944 (Bankr. N.D. Ill. 1995) (internal quotation marks omitted). Where a plaintiff knows that a promise is subject to approval by another person or entity, it is unreasonable to rely on that promise. *See Mason & Dixon Lines, Inc. v. Glover,* 975 F.2d 1298, 1305 (7th Cir. 1992) (holding that reliance on trustee's representation regarding settlement was unreasonable where written notice provided that any settlement would be subject to approval by the other trustees); *Dougherty v. Akzo Nobel Salt, Inc.*, 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999) (interpreting Illinois law and holding that reliance on manager's

---

[13] Although not binding here, it is instructive that courts in other states have also consistently recognized in the context of offers to hire a professor that where state ordinances reserve the authority to hire or approve the hiring of professors to a particular university body, there can be no liability for promissory estoppel against the university for actions taken by an employee when that university body has not approved the promise. *See Oja v. Blue Mountain Cmty. Coll.*, No. 03-964, 2004 WL 1119886, at *6 (D. Or. May 19, 2004) *aff'd in relevant part, rev'd in part*, 184 F. App'x. 597 (9th Cir. 2006) (holding that it was unreasonable to rely on a university's interim president's promise of employment when the plaintiff knew approval by the university's Board was required); *Daniel v. Univ. of Cin.*, 116 Ohio Misc. 2d 1, 5 (Ohio Ct. Cl. 2001) (holding that it was unreasonable for a prospective professor to rely on promises from the Director of Graduate Studies and a professor at a university when state statutes gave the board of trustees of the university sole authority to make employment contracts).

statement that he would not be fired was unreasonable when the plaintiff knew manager did not have final authority to make decision); *Ross v. May Co.*, 377 Ill. App. 3d 387, 394 (1st Dist. 2007) (finding reliance on manager's statements unreasonable where employee handbook made clear that senior vice president of human resources was the only person who could alter an employee's employment status).

Thus, because the laws of the State of Illinois vest the Board with the exclusive power to appoint professors to the University, any reliance by Plaintiff was unreasonable, and his claim for promissory estoppel must be dismissed.

## II.      Defendants Did Not Violate Plaintiff's Constitutional Rights

Plaintiff alleges three ill-pleaded constitutional claims under 42 U.S.C. § 1983: violation of his First Amendment rights; violation of his Procedural Due Process right; and conspiracy. To survive a motion to dismiss a Section 1983 action, a plaintiff must "allege plausibly, under the pleading standards of *Iqbal*, that defendant was directly or indirectly responsible for the claimed deprivation of constitutional rights." *Simpson v. Robb*, No.13-1263, 2014 WL 4817491, at *7 (C.D. Ill. Sept. 29, 2014). The Complaint must establish a defendant's "personal responsibility" for the violation. *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981).

### A.    Plaintiff Fails to Allege Any Defendant's Direct Personal Responsibility for Any Purported Violation of His Constitutional Rights.

Counts I and II are brought only against the Trustees and Administrators, yet, Plaintiff fails to allege sufficient direct personal responsibility on the part of any individual Trustee or Administrator to state a claim. The only conduct ascribed to Trustees is two-fold: (1) participation in a July 24, 2014 executive session, at which time Plaintiff's candidacy was discussed, (Compl. ¶ 82); and (2) a September 11, 2014 meeting at which the Trustees voted down his appointment, (*id.* ¶ 95). The vote not to approve Plaintiff's appointment was based on a record of public outrage evidenced by the hundreds of communications, some of which are attached to the CAFT Report. (*See* Ex. 1,

Doc. 6 at Pgs. 60-140.)  Accordingly, the Trustees' actions were within the scope of their statutory

mandate and limited to two instances of administrative conduct.

Plaintiff has brought claims against three administrators:  President Robert Easter; Vice

President of Academic Affairs Christopher Pierre; and Phyllis Wise, the Chancellor of the Urbana-

Champaign campus.  As to each of these administrators, however, Plaintiff fails to describe

individual action which would subject any of them to liability.

First, Plaintiff fails to ascribe *any* actionable conduct to President Easter.  There is not a

single statement, action, meeting, or document linked to President Easter.  Second, the only

allegation regarding Vice President Pierre was his status as  a co-signatory of the August 1, 2014

letter, which informed Plaintiff that his appointment would not be recommended for submission to

the Board in September of 2014.  (Compl. ¶ 71.)  Plaintiff's appointment was put to an unsuccessful

Board vote in September.  Plaintiff has not pled that President Easter or Vice President Pierre had

any influence on the Board's decision-making process or that either had any authority to override

the Board's decision.  Plaintiff's allegations regarding President Easter and Vice President Pierre are

insufficient to establish any violation of any constitutional right.

The Complaint contains a myriad of allegations regarding Chancellor Wise; none of the

actions pled, however, implicate Plaintiff's constitutional rights.  Plaintiff alleges that Chancellor

Wise:  (1) initially approved Plaintiff's appointment (*id.* ¶ 31); (2) sent Plaintiff an invitation to a fall

reception for new faculty (*id.* ¶ 36); (3) informed Professor Robert Warrior that she would monitor

Plaintiff's tweets prior to the Board's review of her recommendation (*id.* ¶ 68); (4) contacted Plaintiff

on August 2, 2014, enclosing a letter informing him that his appointment would not be

recommended for submission to the Board (*id.* ¶ 71); (5) met with a member of the University's

Business Council and the Board of the Hillel Foundation, Steven Miller, regarding Plaintiff (*id.* ¶ 85);

(6) allegedly "destroyed" a two-page memorandum six months before Plaintiff filed suit (*id.* ¶ 81); (7)

[16]

published an open letter regarding her decision not to recommend him for approval by the Board (*id.* ¶ 87); and (8) informed the Board that she would not be recommending Plaintiff for approval (*id.* ¶ 95). Despite Plaintiff's conclusory and speculative allegations that Chancellor Wise's decision was based entirely on alleged pressure from Unknown Alleged Donors, the facts pled in the Complaint establish that it was the Board that ultimately considered and rejected Plaintiff's appointment. Chancellor Wise did not violate any constitutional rights purportedly possessed by Plaintiff.

The Court need not even advance to the substantive analysis of Counts I and II. Plaintiff fails to sufficiently allege direct personal responsibility on the part of the Trustees and Administrators to state a claim under *Iqbal* and those counts must be dismissed.

B. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law.

Even if the Court were to find that Plaintiff's allegations were sufficiently alleged against any Trustee or Administrator, as a matter of law, the University's interest in avoiding disruption on its campus and any imposition on the school's educational mission outweighs Plaintiff's interest in the speech in question. As the Seventh Circuit has recognized "a public employee's freedom of speech on matters of public concern is far from absolute and all-encompassing, and the exercise of protected speech may nevertheless serve as the basis for termination if the employer articulates convincing reasons for taking such action." *Trejo v. Shoben*, 319 F.3d 878, 884-85 (7th Cir. 2003). To establish a *prima facie* First Amendment retaliation claim, Plaintiff bears the burden of establishing that: (1) he was a public employee who engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would be likely to deter First Amendment activity in the future; and (3) the First Amendment activity was at "at least a motivating factor" in Defendants' decision to take such retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Under *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty, Ill.*, 391 U.S. 563 (1968), however, Plaintiff's First Amendment retaliation claim still fails, as the likelihood of disruption based

[17]

on Plaintiff's speech outweighed Plaintiff's interests in commenting upon matters of public concern.

The Seventh Circuit has interpreted the case of *Garcetti v. Ceballos*, 547 U.S. 410 (2006) to "signal the

Court's concern that courts give appropriate weight to the public employer's interests." *Piggee v. Carl*

*Sandburg Coll.*, 464 F.3d 667, 672 (7th Cir. 2006).

The Seventh Circuit has identified seven factors to consider when balancing Plaintiff's First

Amendment interests against the University's interest in providing a safe and efficient environment

for the education of its students, including:

> (1) whether the statement would create problems in maintaining discipline by
> immediate supervisors or harmony among co-workers; (2) whether the employment
> relationship is one in which personal loyalty and confidence are necessary; (3)
> whether the speech impeded the employee's ability to perform her daily
> responsibilities; (4) the time, place, and manner of the speech; (5) the context in
> which the underlying dispute arose; (6) whether the matter was one on which debate
> was vital to informed decisionmaking; and (7) whether the speaker should be
> regarded as a member of the general public.

*Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999). Under *Pickering*, "evidence of actual disruption

is unnecessary." *Marquez v. Turnock*, 967 F.2d 1175, 1179 (7th Cir. 1992).

The record established by Plaintiff's Complaint and the referenced documents is beyond

dispute. As a result of Plaintiff's Tweets, Chancellor Wise received hundreds of letters, e-mails, and

phone calls from concerned students, family members of students, and alumni of the University

expressing collective outrage and communicating concerns about, among other things, students'

safety, ability to practice their religion, and comfort level on campus. (*See* Ex. 1, Doc. 6 at Pgs. 60-

140.) The Seventh Circuit has recognized that educational institutions have an interest in avoiding

precisely this type of disruption to its students' education. In *Piggee*, the Seventh Circuit granted

summary judgment in favor of Carl Sandburg College, after a part-time instructor of cosmetology

gave a gay student two religious pamphlets on the sinfulness of homosexuality. *Piggee*, 464 F.3d at

668. The court found that the plaintiff's speech "was not relating to her job . . . [and] if it did

anything, *it inhibited her ability to perform that job by undermining her relationship with [the student] and other*

*students who disagreed with or were offended by her expressions of her beliefs.*" *Id.* at 672 (emphasis added).

After analyzing evidence of disruption in students' education, the court concluded "[t]his evidence

shows, at a minimum, that the college reasonably took the position that nongermane discussions of

religion and other matters had no place in the classroom, because they could impede the school's

educational mission." *Id.*[14]

Similarly, in *Bonds v. Mil. Cnty.*, 207 F.3d 969, 981 (7th Cir. 2000), the Seventh Circuit

affirmed a decision of the trial court in favor of Milwaukee County, which had revoked a contract

offer to a public employee following insubordinate speech. Upon performing a *Pickering* analysis,

the court noted that:

> After considering the views of three county supervisors and her chief of staff,
> Ordinans concluded that hiring Bonds would become a "big problem" and a
> "disaster." Under these circumstances, the County's interests in government
> efficiency and workplace harmony justified its decision to rescind its offer to Bonds
> for a policymaking position and outweighed Bonds's First Amendment interests
> under *Pickering*. The alternative for the County was to hire a prospective employee
> for a sensitive policymaking position who it believed would be disruptive and
> ineffective in his new role. The County's decision not to hire Bonds because of his
> speech at the July 26 forum meets the *Pickering* standard and does not violate the
> First Amendment.

*Id.* at 982; *see also Propst v. Bitzer*, 39 F.3d 148, 152 (7th Cir. 1994) (finding that the interests of the

University in avoiding workplace disruption outweighed the interests of two University employees in

their speech about the appropriation of funds); *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1265 (10th Cir.

2005) ("[I]t was reasonable for the University to conclude that Dr. Schrier's speech, including the

manner in which he expressed himself to others, was having a negative impact both on his

performance and on the University's operations.").

Based on the ample documentation reflecting a likely, if not already occurring, disruption at

---

[14] While the speech in *Piggee* occurred inside the clinical beauty salon where instruction took place, the Seventh Circuit
observed that "[h]ad [the plaintiff] come up to [the student] in a local grocery store and slipped the pamphlets into his
pocket, we would have a different case. It is still possible that this might have raised concerns, because the
instructor/student relationship does not end the moment the instructional period is over." *Piggee*, 464 F.3d at 671.

the University, the Board's decision not to grant Plaintiff's appointment to the faculty satisfies the *Pickering* test and precludes Plaintiff's First Amendment retaliation claim.

      C.  <u>Plaintiff Fails to Allege Facts Sufficient to Establish a Violation of His</u>
            <u>Procedural Due Process Rights</u>.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. §1. A procedural due process analysis involves two-steps: first, the Court determines whether the plaintiff was deprived of a protected interest; and second, the Court determines what, if any, process is due. *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Under this analysis, Plaintiff has failed to state a claim for procedural due process. Plaintiff's Complaint purports to plead a protected interest in two ways: a property interest and a liberty interest. We address each in turn.

         *i.*  *Plaintiff Did Not Have a Property Interest in a Contingent Offer*

Plaintiff has not pled facts sufficient to establish a property interest in a position that was always subject to the approval of the Board. "A property interest is established 'by existing rules or understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Lopez v. Bd. of Trs. of Univ. of Ill. at Chi.*, 344 F. Supp. 2d 611, 623 (N.D. Ill. 2004) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Property interests protected by procedural due process do not stem from mere "unilateral expectations," *Roth*, 408 U.S. at 577, but rather "a ***mutually explicit*** understanding of his continued or indefinite employment," *Lopez*, 344 F. Supp. 2d at 623 (emphasis added).

Simply put, there is no mutually explicit understanding of employment where a prospective employee has a conditional offer. *See, e.g.*, *Yatvin v. Mad. Metro. Sch. Dist.*, 840 F.2d 412, 417 (7th Cir. 1988) applicant for promotion's "expectation was too exiguous to count as property under the due process clauses, given the inherent uncertainty whether she could meet the condition . . . ."); *DeGroot*

*v. Vill. of Matteson*, No. 13-08530, 2014 WL 3360562, at *2 (N.D. Ill. July 9, 2014) (dismissing procedural due process claim where court found that candidate for firefighter position with a conditional offer of employment had no property interest in prospective employment); *Spanierman v. Hughes*, 576 F. Supp. 2d 292, 302 (D. Conn. 2008) ("Thus, despite whatever unilateral expectations he may have held, the Plaintiff had no 'legitimate claim of entitlement' to a renewal of his employment contract with the DOE.").

    While "[a] property interest in employment can . . . be created by ordinance, or by an implied contract . . . the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Steshenko v. Gayrard*, No. 13-03400, 2014 WL 4904424, at *11 (N.D. Cal. Sept. 29, 2014) (finding that graduate student failed to allege a protected property interest as he had plead no facts showing that University regulations, state law, or any other independent source created a legitimate claim of entitlement to admission to the programs). As discussed *supra*, Illinois state law and the conditional offer letter empowered the Board to make the final decision on Plaintiff's appointment and there was no guarantee that such appointment would be granted. In *Thomas v. Bd. of Exam'rs, Chi. Pub. Sch.*, 651 F. Supp. 664, 666 (N.D. Ill. 1986), the court granted the defendants' motion to dismiss a former public school teacher's procedural due process claim based on the local Board of Examiners' refusal to recommend her for the Board of Education's approval for a principal's certificate upon failing an oral examination. Recognizing that Illinois law empowered the Board of Education "to maintain and operate the Chicago public school system," and that the Board of Education "has the ultimate authority on appointments and promotions of teachers and principals," the court found that the plaintiff had no entitlement to the certificate. *Id.* at 665, 667. The court noted that the applicant would have a legitimate expectation of the certificate "only if the relevant state law guaranteed all applicants for principal certificates a certificate simply because they applied for one." *Id.* at 667. The court found that Illinois law did not

guarantee such a result and that "if such were the case the oral examination would serve absolutely no purpose." *Id.*

Under Illinois law, as discussed *supra*, Plaintiff's offer was contingent upon Board approval and there was no mutually explicit understanding of his employment. Therefore, Plaintiff was never an employee at the University and had no legitimate claim of entitlement, nor did he have a protected property interest.

> ii. *Plaintiff Fails to Sufficiently Allege That Defendants' Actions Make it Virtually Impossible for Him to Find New Employment as a Professor of American Indian Studies*

Similarly, Plaintiff fails to state a claim regarding a deprivation of his liberty interest. Plaintiff alleges that he surrendered his position at Virginia Tech, has been denied the opportunity to teach by the University, that his "academic career is in shambles," and that he cannot publish articles in academic journals and present his scholarship to colleagues. (Compl. ¶ 5.) Plaintiff also contends that he suffered a deprivation of his liberty interest because of "false and defamatory statements" made by unnamed administrators and the Board's denial of his appointment to the faculty. (*Id.* ¶ 109.) Plaintiff contends that members of the administration erroneously claimed that he is anti-Semitic or bigoted,[15] attacked his scholarship and credentials, and claimed that he is unfit to teach, which caused harm and stigma to his professional, intellectual, and business reputation. (*Id.*)

These allegations do not specifically identify any of the Trustees or Administrators as offenders and are insufficient to state a claim for a due process deprivation of a liberty interest. "[A]n employee's right to pursue his or her chosen occupation is infringed only if the circumstances of the discharge, at least if they were publicly stated, had the effect of blacklisting the employee from

---

[15] Nowhere in the Complaint does Plaintiff provide a single factual allegation regarding any member of the administration of the University claiming that he was anti-Semitic or bigoted. Rather, Plaintiff alleges Trustee Kennedy said that he believed *the Tweets* were anti-Semitic. (Compl. ¶¶ 97-98.) Plaintiff's allegations of defamation are fallacious and unsupported by his Complaint. Plaintiff also claims that "his prominent scholarship and excellent teaching credentials" earned him tenure and self-describes as a "nationally recognized scholar" and "extremely prolific academic." (*Id.* ¶¶ 5, 18, 19.) To the extent Plaintiff's liberty interest claim is predicated on characterizations of his Tweets – characterizations that he maintains are false and legally actionable – potential employers are free to agree or disagree with him and offer him employment as they see fit.

employment in comparable jobs." *Trejo*, 319 F.3d at 889 (internal quotation marks omitted); *see also Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000) (quoting *Head v. Chi. Sch. Bd. of Trs.*, 224 F.3d 794, 801 (7th Cir. 2000)) ("It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions 'make it virtually impossible for the employee to find new employment in his chosen field.'"). Plaintiff's "diminished ability" to publish articles in academic journals and present his research to colleagues is not enough to constitute a deprivation of his liberty interest. *See McElearney v. Univ. of Ill. at Chi. Circle Campus*, 612 F.2d 285, 288 (7th Cir. 1979) ("By dismissing McElearney the University administrators did not prevent him from pursuing his chosen area of research. They simply refused to underwrite it.").

For all of these reasons, Plaintiff has failed to state a claim for a violation of his due process rights and Count II must be dismissed.

> D. <u>Plaintiff Fails to Allege an Underlying Constitutional Violation or Agreement Among Defendants</u>.

Plaintiff's conspiracy count is based on an alleged agreement to violate his constitutional rights under 42 U.S.C. §§ 1983 and 1985. To survive a motion to dismiss his Section 1985 conspiracy claim, a plaintiff must plead an agreement amongst defendants to deprive plaintiff of his rights, and that he was actually deprived of those rights by overt acts taken in furtherance of the conspiracy. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Plaintiff cannot merely allege a conspiracy solely within the University. *See Stone v. Bd. of Trs. of N. Ill. Univ., et al.*, No. 13-04089, 2014 WL 3845164, at *9 (N.D. Ill. Aug. 5, 2014) (dismissing Section 1983 conspiracy claim based on intra-corporate conspiracy doctrine). Notably, "conspiracy claims have been held to a higher pleading standard." *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). "[C]ourts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

Plaintiff cannot survive the Motion to Dismiss here. First, as there was no violation of Section 1983, Plaintiff has failed to state a claim for conspiracy. Second, Plaintiff has not alleged *facts* regarding *any* express or implied agreement between any Defendants, let alone an agreement to deprive him of his constitutional rights. This pleading deficiency is fatal. *See Martin v. City of Chi.*, No. 12-9207, 2014 WL 4947674, at *2 (N.D. Ill. Sept. 30, 2014). In lieu of specific allegations of an agreement, Plaintiff speculatively pleads that all Defendants "reached an agreement among themselves to deny Professor Salaita's appointment to the University's faculty . . . ." (Compl. ¶ 114.) However, caselaw is legion that speculative allegations of an agreement are insufficient to survive a motion to dismiss. *See Roehl v. Merrilees*, No. 11-4886, 2012 WL 1192093, at *8 (N.D. Ill. Apr. 10, 2012) (granting motion to dismiss Section 1985 conspiracy claim where allegations of agreement were not alleged above a speculative level); *see also Gomez v. Garda CL Great Lakes, Inc.*, No. 13-1002, 2013 WL 4506938, at *6 (N.D. Ill. Aug. 23, 2013) (same). Count III must be dismissed.

### III. Plaintiff's Remaining State Law Causes of Action Fail to State a Claim Against Any Defendant

#### A. Plaintiff's Merged Claims of Tortious Interference with Contractual and Business Relations Fails as a Matter of Law.

Plaintiff's tortious interference claims are based on his novel theory that while he does not know who they are or exactly what they did, a group of invisible Unknown Alleged Donors to the University "intentionally" acted to harm him. As with his contract claims, Plaintiff's tortious interference claims are based on his unreasonable reliance on a conditional offer, which was unequivocally subject to Board approval. For the reasons provided below, they must be dismissed.[16]

##### i. *Plaintiff Fails to Allege Either a Valid and Enforceable Contract or Actionable Speech*

---

[16] In direct contravention of the Federal Rules of Civil Procedure, Plaintiff impermissibly pleads a self-styled, merged claim of tortious interference with contractual and business relations, which are two separate torts with separate elements of proof. This error in pleading alone warrants dismissal of the claims. *See Raymond v. Alexander*, No. 11-00532, 2012 WL 4388328, at *9 (S.D. Ill. Sept. 25, 2012) (requiring that a unified claim for "tortious interference with contractual relations and with prospective economic advantage" be re-pleaded so as to distinguish between the two competing theories).

To state a claim for tortious interference with contract, Plaintiff must allege: (1) a valid and enforceable contract between Plaintiff and the Board; (2) the Unknown Alleged Donors' awareness of the contract; (3) the Unknown Alleged Donors' intentional and unjustified inducement of a breach of that contract; (4) a subsequent breach by the Board, caused by the Unknown Alleged Donors' wrongful conduct; and (5) damages. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154-55 (1989). There can be no claim for tortious interference with contract unless there is a valid and enforceable contract. *Scheduling Corp. of Am. v. Massello*, 119 Ill. App. 3d 355, 362 (1st Dist. 1983). Here, as described *supra* at Section II.A., Plaintiff has failed to adequately plead that he had a valid and enforceable contract with the University. Accordingly, there can be no cause of action for intentional interference with contract against the Unknown Alleged Donors.

Additionally, the allegedly actionable conduct that forms the basis of the claim is privileged. "[W]here the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *HPI*, 131 Ill. 2d at 156. Plaintiff has failed to do so except for the conclusory statement that the Unknown Alleged Donors' conduct was done "wrongfully, intentionally, and without just cause." Plaintiff alleges that the Unknown Alleged Donors' conduct involved writing letters and e-mails related to a "protest" and was "based on . . . strong disagreement with Professor Salaita's views regarding Israel." (Compl. ¶ 78.) Even as pled, the Unknown Alleged Donors' speech was privileged and is inactionable. *See Nat'l Org. for Women, Inc. v. Scheidler*, No. 86-7888, 1997 WL 610782, at *28-31 (N.D. Ill. Sept. 23, 1997) (declining to apply state tort law to a political campaign and boycott because doing so would violate the First Amendment). Dr. Salaita therefore apparently claims that while the University's decision not to approve him for a position on the faculty has violated his free speech rights under the First Amendment, a decision by a private citizen to notify the University that he or she has decided not to donate money to the University enjoys no First

Amendment protection whatsoever. The decisions and alleged statements of Unknown Alleged Donors cannot constitute a claim for tortious interference with contract.

### ii. *Plaintiff Fails to Allege a Reasonable Expectation of a Business Relationship*

Plaintiff's claim for tortious interference with prospective business relations is even more problematic. To state a claim for tortious interference with prospective business relations, a plaintiff must allege: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of his expectancy; (3) intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from becoming a valid business relationship; and (4) damages. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484 (1998). Here, Plaintiff's expectation of a valid business relationship was unreasonable, as it was based on a conditional offer. *See Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 35 (affirming dismissal of claim for interference with prospective business relations where expectancy was "conditional at best"). Moreover, as with Plaintiff's claim of tortious interference with contractual relations, the Unknown Alleged Donors' speech was privileged and is inactionable. Counts VI and VII must be dismissed as a matter of law.

### B. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.

Plaintiff's claim of intentional infliction of emotional distress is wholly inapplicable in a suit based on the Board's decision not to hire him. Generally, a plaintiff may recover damages for intentional infliction of emotional distress if he alleges: that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did in fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 85 (1988). However, with good reason, under Illinois law, "[c]ourts are cautious in their treatment of emotional distress claims in the employment domain, because if discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee

would have a cause of action." *Safi v. Royal Jordanian Airlines*, No. 08-7365, 2010 WL 4339434, at *4 (N.D. Ill. Oct. 25, 2010).

To meet the first prong, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003). In weighing the sufficiency of the complaint, courts apply an objective standard, *Lewis v. Westinghouse Elec. Corp.*, 139 Ill. App. 3d 634, 635 (1st Dist. 1985), and the determination is based on the facts of the particular case, *Knierim v. Izzo*, 22 Ill. 2d 73, 86 (1961). Here, Plaintiff rests his claim on two instances of purportedly "outrageous" conduct: (1) the Board, Trustees, and Administrators' actions in inducing Plaintiff to resign from his position while not appointing him to the faculty; and (2) the Unknown Alleged Donors' interference with his appointment. (Compl. ¶¶ 136-37.) Clearly, these allegations are inadequate. As discussed *supra* at Section II.A., Plaintiff included a dearth of specific factual nonconclusory allegations against the Administrators generally, and nothing that would qualify as "extreme" or "outrageous." As to the Board and the Trustees, the law is clear that "[f]ailing to hire . . . does not amount to conduct that is extreme and outrageous." *Bogie v. PAWS Chi.*, 914 F. Supp. 2d 913, 917 (N.D. Ill. 2012) (internal quotation marks omitted). In the employment context, Plaintiff's allegations are woefully inadequate to establish outrageous conduct. *See Green v. Casey's Retail Co.*, No. 11-1103, 2012 WL 253368, at *4 (S.D. Ill. Jan. 26, 2012) (collecting cases regarding extreme and outrageous conduct).

With regard to intent, Plaintiff summarily pleads that Defendants' actions "were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability." (Compl. ¶ 139.) A summary recitation of the element of the tort does not suffice to allege intent. *See S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 860 (N.D. Ill. 2010) (dismissing intentional infliction of emotional distress claim where the plaintiff's "allegations comprise[d] nothing more than a recital of the three elements

of an [intentional infliction of emotional distress] claim").

Finally, as to the third element, Plaintiff fails to properly allege that he suffered *severe* emotional distress and that Defendants' conduct was the proximate cause of his severe distress. Under Illinois law, severe emotional distress is, "distress so severe that no reasonable person could be expected to endure it." *Dunn v. City of Elgin*, 347 F. 3d 641, 651 (7th Cir. 2003) (internal quotation marks omitted). Plaintiff's only descriptions of his "severe emotional distress" are: (1) the conclusory statement that he suffered "injuries, including severe emotional distress and great conscious pain and suffering prior to his death,"[17] (Compl. ¶ 141), which is merely a recitation of the third element of the tort and insufficient to state a claim; and (2) that he felt "ashamed" when he received notice he would not be hired, (*id.* ¶ 74). Plaintiff's purported feelings of shame are inactionable under Illinois law. *See Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976) ("Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable.").

For all of these reasons, the Court must dismiss Count VIII of Plaintiff's Complaint.

### C. Plaintiff's Spoliation of Evidence Claim Fails as a Matter of Law

Illinois does not recognize a standalone cause of action for spoliation of evidence. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509–10 (7th Cir. 2007). Rather, under Illinois law, spoliation of evidence is a form of negligence and must be pled as such. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26. Plaintiff's spoliation of evidence claim fails to properly allege a claim for negligence. Even if the Court were to generously construe Plaintiff's spoliation argument as a

---

[17] In what is in all likelihood a typographical error, Plaintiff contends that he "suffered injuries, including severe emotional distress and great conscious pain and suffering ***prior to his death***." (Compl. ¶ 141.) (emphasis added). This error merely highlights the type of case – a wrongful death action – where an intentional infliction of emotional distress claim might actually be appropriate. *See Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071, 1085 (N.D. Ill. 2014) (applying Illinois law and awarding judgment to the plaintiff based on a claim of intentional infliction of emotional distress where the defendants engaged in terrorist activities in efforts to kill innocent civilians). Simply stated, Plaintiff's claim is not applicable here.

negligence claim, however, this claim still must be dismissed as a matter of law.

To properly state such a negligent spoliation claim, Plaintiff must have alleged that: (1) Chancellor Wise owed a duty to him to preserve the "two-page document" that was allegedly given to her by a donor; (2) she breached that duty by losing or destroying that two-page document; (3) the loss or destruction of the two-page document was the proximate cause of his inability to prove an underlying lawsuit; and (4) as a result, he suffered actual damages. *See Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 15. Plaintiff has failed to meet each of these elements.

In Illinois, the general rule is that "there is no duty to preserve evidence." *Martin*, 2012 IL 113270, at ¶ 27 (citing *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 195 (1995)). Rather, the Supreme Court in *Boyd* setup a two-prong test to determine whether there is such a duty. The Court must "first determine whether such a duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking," and, "[i]f so . . .whether that duty extends to the evidence at issue—i.e., whether a reasonable person should have foreseen that the evidence was material to a potential civil action." *See Dardeen v. Kuehling*, 213 Ill. 2d 329, 336 (2004). Plaintiff does not contend, nor could he, that there was an agreement or contract between him and Chancellor Wise. *See Andersen v. Mack Trucks, Inc.*, 341 Ill. App. 3d 212, 217 (2d Dist. 2003) (finding that the agreement or contract must have been between the parties).

Plaintiff contends that Chancellor Wise had a duty under 5 ILCS 160/1, *et seq.* (the "Illinois State Records Act") to preserve a two-page document given to her by an alleged donor. (Compl. ¶ 144.) Plaintiff's allegation is not supported by either the language of the statute or by a single case imposing such a duty. Under the Illinois State Records Act:

> The head of each agency shall cause to be made and preserved records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency designed to furnish information to protect the legal and financial rights of the state and of persons directly affected by the agency's activities.

5 ILCS 160/8. As an initial matter, the two-page document in the Complaint is not a "record" under the Illinois State Records Act.[18] The document is not alleged to have been received in pursuance of state law, nor was it alleged to have been in connection with the transaction of public business. Moreover, the Illinois State Records Act creates an obligation to preserve documents related to "the organization, function, policies, decisions, procedures, and essential transactions of the agency," none of which encompass a two-page document purportedly provided by a University donor in connection with the potential hire of faculty.

Under *Boyd*, a plaintiff must plead that "a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Martin*, 2012 IL 113270, ¶ 27 (internal quotation marks omitted). The failure to allege facts indicating that Chancellor Wise knew that the document would be material to a potential civil action is fatal to Plaintiff's claim. *See Andersen*, 341 Ill. App. 3d at 218 (finding that the plaintiff failed to allege sufficient facts indicating reasonable foreseeability of the materiality of the evidence).

Finally, Plaintiff has not claimed, as is required, that without the alleged document destruction, he would have had a "reasonable probability of succeeding" in an otherwise valid, underlying cause of action. *Boyd*, 166 Ill. 2d at 197; *see also Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 472 (1st Dist. 2006) ("To state a claim for negligent spoliation, a plaintiff must allege that but for the spoliation by defendant, plaintiff likely would have prevailed in the underlying suit."). Plaintiff merely alleges that Chancellor Wise's alleged destruction *interfered* with his ability to prove his claims, presumably in the present suit. (Compl. ¶ 145.) Plainly, that is insufficient. Plaintiff cannot demonstrate that the two-page document is material in any way to his ultimate

---

[18] "Records" include documents and other materials "made, produced, executed or received by any agency in the State in pursuance of state law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its successor as evidence of the organization, function, policies, decisions, procedures, operations, or other activities of the State or of the State Government, or because of the informational data contained therein." 5 ILCS 160/2.

success in any suit, nor can he demonstrate a duty to preserve this document. Accordingly, Count

IX fails as a matter of law and must be dismissed.

## IV. Defendants Are Immune from Suit[19]

### A. The Court Lacks Subject Matter Jurisdiction Over the Board and the Trustees and Administrators in their Official Capacities Pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial

power of the United States shall not be construed to extend to any suit in law or equity, commenced

or prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State." U.S. Const. amend XI. Under Illinois law, this Court lacks subject

matter jurisdiction over the Board and the Trustees and Administrators sued in their official

capacities under Federal Rule of Civil Procedure 12(b)(1).

#### i. The Board is Immune from Suit in Federal Court

The Seventh Circuit has repeatedly held that a state's sovereign immunity extends to its

agencies, and that the Board is a state agency. *See Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F. 2d 904, 907

(7th Cir. 1991).[20] While the State of Illinois has generally waived its sovereign immunity under State

Lawsuit Immunity Act, *see* 745 ILCS 5/1, the Illinois Court of Claims possesses *exclusive* jurisdiction

over certain suits against the Board, *see* 705 ILCS 505/1, *et. seq.* Exclusive jurisdiction includes

---

[19] Plaintiff's failure to specifically identify which claims are alleged against the Trustees and the Administrators in their individual capacity and which are alleged against them in their official capacity and his failure to specifically identify the relief requested pursuant to the particular claims complicates this Court's analysis of sovereign and qualified immunity. Nevertheless, under the most generous reading of Plaintiff's Complaint, the Board, Trustees, and Administrators are entitled to sovereign and qualified immunity and must be dismissed from the suit.

[20] Plaintiff alleges that, as a function of the University's funding, which stems from a variety of sources, the Board is not protected by sovereign immunity. (Compl. ¶ 9.) Plaintiff is wrong. While a state agency can lose its designation as an arm of the State, a university risks doing so "if a State totally privatizes a once public college or hospital, the newly private body would indisputably lose its privileged status." *Pollak v. Bd. of Trs. of Univ. of Ill.*, No. 99-710, 2004 WL 1470028, at *2 (N.D. Ill. June 30, 2004) (finding that the University was entitled to sovereign immunity and refusing to engage in fact-intensive inquiry on the issue). As recently as February of 2014, courts in the Northern District of Illinois have applied the doctrine of sovereign immunity to the University without conducting any factual analysis on their sources of funding. *See Mutter v. Madigan*, 17 F. Supp. 3d 752, 757-58 (N.D. Ill. 2014). Plaintiff's funding argument is of no moment.

claims sounding in tort against the Board and those against the State based on contracts entered into with the State of Illinois. *See* 705 ILCS 505/8.[21] The Illinois Court of Claims' exclusive jurisdiction prevents this Court from exercising concurrent or supplemental jurisdiction over any claims against the Board. *See Osteen v. Henley*, 13 F.3d 221, 224 (7th Cir. 1993) (affirming dismissal of claims against university officials in their official capacity based on the doctrine of sovereign immunity).

Although unmoored to an individual claim, Plaintiff requests preliminary and permanent injunctive relief including "reinstatement by completing his appointment." (*See* Compl. Wherefore Clause.) Normally, "a suit for prospective injunctive relief is not deemed a suit against the state and thus is not barred by the Eleventh Amendment." *Mutter*, 17 F. Supp. at 758. However, "'if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign,' . . . a claim for injunctive relief requiring that a plaintiff be newly hired may be barred by the Eleventh Amendment." *Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania*, 540 F. App'x 80, 82 (3d Cir. 2013) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949)). It is not clear that requiring the Board to hire Plaintiff is a remedy recognized by the Seventh Circuit. Moreover, the only federal claim to which such a remedy could apply against the Board, Count III for conspiracy, is a frivolous claim that fails as a matter of law.

> ii. *The Trustees and Administrators Are Immune from Suit in their Official Capacities in Federal Court*

When the Trustees and Administrators are sued in their official capacities, as they are here, the doctrine of sovereign immunity applies and this Court lacks subject-matter jurisdiction. *See Williams v. Univ. of Ill.*, 945 F. Supp. 163, 165 (N.D. Ill. 1996) ("A suit against an individual in his

---

[21] Additionally, the University of Illinois Act provides that "[t]he Board of Trustees of the University of Illinois shall . . . have power to contract and be contracted with, to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims . . . ." 110 ILCS 305/1. Accordingly, to the extent Count VIII is not dismissed with prejudice, as it should be, the Illinois Court of Claims also possesses exclusive jurisdiction over such a claim involving the Board.

official capacity is a suit against the entity of which he is an agent.").  Claims against individual officers will be considered against the State if the individual officers were:  (1) acting within the scope of their authority; (2) performing a duty not owed by the public generally independent of state employment; and (3) engaged in matters ordinarily within that employee's normal and official functions.  *Richman v. Sheehan*, 270 F.3d 430, 441 (7th Cir. 2001).

By Plaintiff's own admission, the Trustees and Administrators were acting within the scope of their employment when the allegedly wrongful conduct occurred.  (Compl. ¶¶ 14, 147.)  Plaintiff does not allege that the Trustees or Administrators exceeded their scope of authority, performed a duty owed by the public generally, or that they were not engaged in matters ordinarily within that employee's normal and official functions.  The remaining issue is whether the Trustees and Administrators have the authority to perform the requested injunctive relief.  As discussed *supra*, it is not clear that the Seventh Circuit permits such a remedy, nor is it clear that the Trustees, in their official capacity, rather than the Board as an entity, have the authority to grant such relief.  It is clear, however, that the Administrators do not.  *See supra* at Section I.A.i.

This Court lacks subject matter jurisdiction over the Board, as well as the Trustees and the Administrators in their official capacities, and the parties must be dismissed from the Complaint.

    B.   <u>The Trustees and Administrators Are Immune from Suit in their Individual Capacities Based on the Doctrine of Qualified Immunity</u>.

Even if the Court were to find that Plaintiff has stated a claim against the Trustees and Administrators, they must be dismissed from the case in their individual capacities based on the doctrine of qualified immunity.  The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity "gives public officials the benefit of legal doubts." *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991).  Under the doctrine, liability for civil

damages is precluded unless a plaintiff pleads facts establishing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 134 S.Ct. 2056, 2066–67 (2014) (internal quotation marks omitted). Plaintiff fails to satisfy either of these criteria.

> i. *The Complaint Fails to Allege That Either the Trustees or the Administrators Violated a Statutory or Constitutional Right*

As discussed *supra* at Section II.A., Plaintiff has failed to allege sufficient facts to establish that any Defendant violated any statutory or constitutional right. When the Complaint is analyzed Defendant-by-Defendant, it is clear that Plaintiff fails to allege particularized facts regarding each Trustee or Administrator's direct personal responsibility that could plausibly support any violation of a clearly established statutory or constitutional right.

> ii. *Even Accepted as True, Plaintiff's Complaint Fails to Allege That the Trustees or Administrators Violated a Clearly Established Right*

There is no clearly established right to unfettered free speech while subject to Board approval for a faculty position. An inability to supply the Court with an analogous case indicates that Defendants should be shielded from liability. *See Hatcher v. Cheng*, No. 13-00407, 2014 WL 5358408, at *1, 5 (S.D. Ill. Aug. 7, 2014) (finding that chancellor was subject to qualified immunity upon overruling tenure decision where "there [was] no allegation in the amended complaint that the plaintiff had a clearly established right at the time the defendant made the final decision to deny her tenure application" and the plaintiff failed to supply "an analogous case establishing a right to be free from the specific conduct at issue").

The inquiry into whether a right was "clearly established" at the time of the alleged violation "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Such a ruling can be made at the motion to dismiss phase. *See Brown v. Chi. Bd. of Educ.*, 973 F. Supp. 2d 870, 881 (N.D. Ill. 2013) (dismissing the principal in a

[34]

First Amendment retaliation suit at the motion to dismiss stage finding that "the alleged constitutional violation here is not so obvious that a reasonable state actor would know what they are doing violates the Constitution") (internal quotation marks omitted).  When confronted with disruption in the workplace, state employees are shielded from liability for alleged violations of even current employees' First Amendment rights.  *See Elliott*, 937 F.2d at 341 (finding defendants protected by qualified immunity where "the law had not clearly established the impropriety of transferring a public employee whose speech created a disturbance undermining the productivity of other workers"  and providing that "[o]bjectively reasonable but mistaken conclusions do not violate the Constitution . . . . the inquiry must focus on what the defendants knew, and whether reasonable persons in their position would have believed their actions proper given the state of the law . . . .").

As the Seventh Circuit has made clear, "[p]ublic officials need not predict, at their financial peril, how constitutional uncertainties will be resolved."  *Hosty v. Carter*, 412 F.3d 731, 739 (7th Cir. 2005).  Plaintiff's claims here are inactionable or, at most, an unsettled issue of constitutional law, and the Trustees and Administrators are entitled to qualified immunity and must be dismissed from the lawsuit in their individual capacities.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an Order dismissing the Amended Complaint in its entirety with prejudice and granting any other relief that this Court deems just and proper.


Dated:  February 25, 2015                    Respectfully submitted,


                                             By:   /s/ Christopher B. Wilson
                                                   One of Their Attorneys


[35]

Christopher B. Wilson
Richard M. Rothblatt
Keith Klein
Josephine Tung
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Tel:  (312) 324-8400
Fax:  (312) 324-9400

*Counsel for Defendants Christopher Kennedy, Ricardo
Estrada, Patrick J. Fitzgerald, Karen Hasara,
Patricia Brown Holmes, Timothy Koritz, Edward L.
McMillan, Pamela Strobel, Robert Easter,
Christophe Pierre, Phyllis Wise, The Board of
Trustees of the University of Illinois*

[36]

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **MEMORANDUM IN SUPPORT OF THE MOTION** was served upon all counsel of record this 25th day of February, 2015 via the Case Management/Electronic Case Filing ("CM/ECF") System.


_____/s/ Christopher B. Wilson_____