IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| STEVEN SALAITA, ) | |
| ) | Case No. 1:15 Civ. 924 |
| Plaintiff, ) | |
| ) | Hon. Harry D. Leinenweber, |
| v. ) | District Judge |
| ) | |
| CHRISTOPHER KENNEDY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |

**PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO FILE BRIEF
OF PROPOSED AMICUS CURIAE AMERICAN JEWISH COMMITTEE**

The proposed amicus curiae seek leave to file a Petition on behalf of the American Jewish Committee ("AJC") in support of the John Doe Unknown Donors to the University ("Donor Defendants"). Having now had the opportunity to review the motion and Petition, Plaintiff responds as follows.[1]

**Argument**

1. The AJC's amicus petition is improper because it represents a backdoor attempt to intervene, without the obligation of making an appearance. Its attempt to weigh in on the issues in this case is, at best, premature. The AJC proposes to file a Petition in favor of a motion to dismiss that the Donor Defendants have not yet filed, asserting a First Amendment immunity defense that has not yet been pleaded, on behalf of individuals who have not yet even been identified. Put simply, because no identified Donor Defendants' interests are ripe, there is no issue in the case on which the AJC has a legitimate need to advise the court, much less try to shape and control the

---

[1] Counsel for the proposed amicus reached out to Plaintiff's counsel the day before filing their motion, asking whether Plaintiff objected. In response, Plaintiff explained that he could not take any position because the amicus had declined to provide Plaintiff an opportunity to review what it was the amicus proposed to file. Instead of providing a copy, amicus filed the instant motion and proposed Petition.

discussion. Once the Donor Defendants are named and appear, or intervene, they can of course assert whatever legitimate legal rights they may have, just like any other litigant would. That is how litigation works; and the parties and the Court should not be burdened with expending resources to address abstract questions not yet implicated in the litigation. No exception should be made simply because these as-yet unnamed Defendants are able to mobilize a powerful organization to try to grant them two bites at the apple: first, this effort at dismissing claims not currently (or properly) the subject of motion practice, with a second chance when the Donor Defendants are named and served.[2]

2. At the end of the day, the AJC is essentially asking the Court to make a finding that the Donor Defendants did nothing wrong. But this is not the end of the day. It is the beginning. The University Defendants presently in the case have not even denied Plaintiff's allegations in their still-forthcoming answers. The issues in dispute cannot be resolved until the facts are discovered. The Donor Defendants have not even been named, they have not been served, and no attorney has appeared on their behalf. If the Donor Defendants wish to present an argument that they committed no tortious interference and did not conspire in support of an unlawful objective, then they can do that once they appear in the case and, if their argument is meritorious, they will win. On the other hand, if after the Donor Defendants enter the case the facts show that they crossed the line and tortiously induced the University to break its legal obligations to Professor Salaita and fire

---

[2] The motion on behalf of the University Defendants seeks dismissal of Plaintiff's tortious interference claims, an unnecessary request since Plaintiff has not sued any of the University Defendants for tortious interference. The University Defendants' motion does not, and cannot, seek dismissal of those claims on behalf of the Donor Defendants. *See, e.g., Chequers Invs. Assocs. v. Am. Nat. Bank & Trust Co. of Chicago*, 1994 WL 496786, at *2 (N.D. Ill. Sept. 9, 1994) (a defendant "lacks standing to move for dismissal of a claim against another party"); *Animashaun v. O'Donnell*, 1992 WL 5310, at *3 (N.D. Ill. Jan. 8, 1992) (a party seeking dismissal can obtain relief only as to himself (citing 5A C. Wright and A. Miller, Federal Practice and Procedure § 1349 ("The movant may obtain relief only as to himself; he has no standing to seek dismissal of the action as to nonmoving parties.")); *Cont'l Cas. Co. v. PPG Indus., Inc.*, 1987 WL 6601, at *2 (N.D. Ill. Feb. 6, 1987).

him because he engaged in protected speech on matters of public concern, then liability will be appropriate. Improperly derailing someone's academic career and interrupting their ability to earn a livelihood is tortious. Ultimately, the AJC is asking this Court to pre-judge Plaintiff's tortious interference claim by concluding that the prospective First Amendment rights of any possible Donor Defendant trump all else.[3] The request is plainly improper.[4]

3. Toward the end of its Petition, the AJC also foreshadows an apparently forthcoming motion to quash discovery. Its argument merely affirms that there is no need for intervention (disguised as an amicus) now, since the Donor Defendants can assert their interests at the right time—after they are identified and discovery has commenced. But in the AJC's view, Plaintiff should not even be permitted to identify the Donor Defendants who pulled the strings to have him fired. This position, should someone eventually move to assert it, is completely untenable. There is no rule of law—First Amendment or otherwise—that would allow potential defendants or witnesses in the case to shield their identities, particularly ones who are seeking to influence the decisions of public officials. If and when the Donor Defendants appear in the case and seek to quash discovery, Plaintiff will explain why that motion should be denied.

4. It also bears mention that the AJC's position is internally inconsistent. Although the AJC repeatedly invokes the importance of having its members' voices heard in public debate and

---

[3] To be clear, Plaintiff is hardly suggesting that he intends to sue every donor to the University of Illinois. Or even every donor who communicated dissatisfaction with Plaintiff's hiring. His only issue is with those donors (*i.e.,* the Donor Defendants) who affirmatively orchestrated his termination, despite his already-formed legal relationship with the University, because of his advocacy for Palestinian rights.

[4] It is also improper given the fact-intensive inquiry that will be required when specific Donor Defendants are named and the merits of Plaintiff's claims against them are adjudicated. *See TABFG, LLC v. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014) (courts recognize a privilege in tortious interference cases only "where the interest which the defendant was acting to protect is one which the law deems to be of equal or greater value than the plaintiff's contractual rights"). One cannot simply invoke the First Amendment and claim immunity from suit for tortious interference. The First Amendment is a potential defense; one subject to a fact-specific inquiry into the parties' respective rights, accounting for the specific conduct alleged.

public discussion, the AJC apparently believes that the Donor Defendants should be permitted to participate anonymously in the "marketplace of ideas" so as to immunize them from any consequences of their actions. That may be true in certain circumstances, but when it comes to expressing views intended to influence public officials, the law does not support them. *Cf. Citizen's United v. Federal Election Comm'n,* 558 U.S. 310, 316 (2010) (rejecting the challenge to the campaign finance statute's requirement of a disclaimer identifying the contributors making the expenditures). Wealthy donors have no constitutional right to secretly whisper instructions into the ears of public University decision-makers to fire someone for unlawful reasons. The University constitutes a community in which everyone's viewpoints are protected by the First Amendment, free of fear of reprisal by those who disagree with the political message.

5. Finally, the AJC inaccurately characterizes the purported need for its voice to be heard at this juncture. According to its motion, the AJC advocates on behalf of Jewish people and against anti-Semitism, as well as in support of human rights and democratic values—and implies that those undoubtedly important values are "under-represented" here. They are not. Professor Salaita may be critical of Israeli state policy, but he abhors anti-Semitism and embraces human rights and democratic values. Indeed, those very values are at the core of his political speech about Israeli government policies. There is no anti-Semitic bias that the AJC, or anyone else, needs somehow to counter-act, and the implication otherwise is unfair and offensive.

## Conclusion

6. The AJC does not offer any reason that it should be permitted to file an amicus brief on behalf of parties who have not been identified and who have not appeared in this case. Yet, should the Court disagree and instead permit leave to file the Petition, Plaintiff respectfully requests an opportunity to substantively respond to the merits of their arguments.

RESPECTFULLY SUBMITTED,

**STEVEN SALAITA**

By: /s/ Jon Loevy
*Counsel for Steven Salaita*

| | |
|---|---|
| Maria LaHood | Jon Loevy |
| Baher Azmy | Arthur Loevy |
| Omar Shakir | Anand Swaminathan |
| THE CENTER FOR CONSTITUTIONAL | Steve Art |
|  RIGHTS | Gretchen Helfrich |
| 666 Broadway | LOEVY & LOEVY |
| 7th Floor | 312 North May Street, Suite 100 |
| New York, NY 10012 | Chicago, IL 60604 |
| 212-614-6464 | 312-243-5900 |

## **CERTIFICATE OF SERVICE**

I, Anand Swaminathan, an attorney, certify that on March 27, 2015, I filed the foregoing Plaintiff's Opposition to Motion for Leave to File Brief of Proposed Amicus Curiae American Jewish Committee using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Anand Swaminathan
*Counsel for Steven Salaita*